**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LUISA M. PELAEZ, CRISTHIAN C. LARA PEDRAZA, PARENTS, ON BEHALF OF THEMSELVES AND THEIR MINOR CHILD, A.L.P., <br><br> Plaintiffs, <br><br> -vs- <br><br> BYHEART INC., AMAZON.COM, INC., ORGANIC WEST, INC., AND DAIRY FARMERS OF AMERICA, INC., <br><br> Defendant. | Case No. 1:26-cv-00567-NRB <br><br> **AMENDED COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Luisa M. Pelaez, Cristhian C. Lara Pedraza, parents, on behalf of themselves and their minor child, A.L.P., by and through undersigned counsel, allege the following against Defendants ByHeart Inc., Amazon.com, Inc., Organic West, Inc., and Dairy Farmers of America, Inc. The allegations are based on information and belief as well as Plaintiffs' firsthand knowledge.

## I.    INTRODUCTION

1.      This case involves terrifying injuries suffered by a newborn infant from ingesting infant formula laced with dangerous bacteria.

2.      Plaintiffs purchased Defendant ByHeart Inc.'s "Whole Nutrition" infant formula from Defendant Amazon because it promised to be a cutting-edge, "clinically proven," healthier alternative to traditional formula. The high-end, organic formula was aggressively marketed as superior to traditional brands with its "certified clean ingredients."

3457174.1

3.      Plaintiffs carefully prepared the formula and fed it to their beloved infant daughter, A.L.P. In October 2025, soon after consuming the formula, 16-day-old A.L.P. fell ill. She was hospitalized and diagnosed with infant botulism. A.L.P. experienced severe illness requiring prolonged pediatric intensive care and invasive life-support measures.

4.      Instead of enjoying the first weeks of new parenthood at home, Plaintiffs spent four stressful and terrifying weeks in the pediatric intensive care unit.

5.      In November 2025, the U.S. Food and Drug Administration ("FDA") recommended and ByHeart agreed to recall all of their formula after it was linked to cases of infant botulism and a positive sample was collected and tested by the California Department of Public Health.

6.      New Jersey public health authorities subsequently seized and submitted for testing the ByHeart formula A.L.P. was fed.

7.      Fortunately, A.L.P. was released from the hospital in late November. However, Plaintiffs face an uncertain future. A.L.P.'s illness and hospitalization disrupted one of the most significant phases of a child's development where an infant's motor skills, language, and cognition are all rapidly evolving. A.L.P.'s doctors anticipate that she will require significant ongoing rehabilitative care, and the extent of the damage to A.L.P.'s nervous system is still not fully known.

8.      As a direct and proximate result of consuming the contaminated ByHeart formula, A.L.P. has sustained severe injuries and damages as set forth within. The damages sustained by Plaintiffs as a result of Defendant's contaminated formula also include medical, hospital, pharmaceutical and therapeutic expenses; other associated out-of-pocket expenses; lost wages; and great physical, emotional, and mental pain.

3457174.1

## II.    **JURISDICTION AND VENUE**

9.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $75,000, exclusive of interest and costs, and Plaintiffs are citizens of a state different from Defendants.

10.    This Court has personal jurisdiction over Defendant because Defendant's principal place of business and corporate headquarters are located at 131 Varick Street, 11th Floor, New York, New York 10013, within this District. Defendant conducts substantial business in this State and within this District, receives substantial compensation and profits from the marketing, distribution, and sale of the Products in this District, and has engaged in the unlawful practices described in this Complaint within this District. Moreover, Defendant has intentionally availed itself of the laws and markets within this District through its substantial business operations, including corporate decision-making, marketing strategy, and oversight of manufacturing operations emanating from its New York headquarters.

11.    In accordance with 28 U.S.C. § 1391(b)(1), venue is proper in this District because Defendant ByHeart Inc. resides in this District, as its principal place of business and corporate headquarters are located within the Southern District of New York. Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including Defendant's corporate decision-making regarding the Products' design, manufacturing oversight, marketing strategy, response to contamination issues at its facilities, and implementation of the formula recall, all of which originated and continue to originate from Defendant's New York headquarters.

3457174.1

### III.    PARTIES

12.    Plaintiffs Luisa M. Pelaez and Cristhian C. Lara Pedraza are the parents of infant A.L.P. A.L.P. was born on October 8, 2025. Plaintiffs are residents of Bogota, New Jersey in Bergen County.

13.    Defendant ByHeart Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business at 131 Varick Street, 11th Floor, New York, New York 10013. Defendant ByHeart is a citizen of the State of Delaware and the State of New York. Defendant ByHeart conducts business throughout the United States, including in the State of New Jersey.

14.    Amazon.com, Inc. ("Amazon.com" or "Amazon") is a publicly traded, for-profit corporation organized and existing under the laws of the State of Delaware. It conducts business throughout the United States, including in New York and New Jersey. Its principal place of business is located at 410 Terry Ave N, Seattle, WA 98109.

15.    Defendant Organic West, Inc. ("Organic West") is a for-profit corporation organized and existing under the laws of the State of California. It conducts business throughout the United States, including in New York and New Jersey. Its principal place of business is located at 1252 Van Ryn Avenue, Manteca, CA 95336.

16.    Defendant Dairy Farmers of America, Inc., ("Dairy Farmers of America") is a for-profit corporation and global dairy cooperative organized and existing under the laws of the State of Kansas. It conducts business throughout the United States, including in New York and New Jersey. Its principal place of business is located at 1405 N. 98th Street, Kansas City, KS 66111.

17.    At all relevant times, Defendants ByHeart, Amazon, Organic West, and Dairy Farmers of America were engaged in the business of manufacturing, producing, processing,

distributing, marketing, supplying, and/or selling the subject infant formula and/or its component ingredients that were contaminated with *Clostridium botulinum*.

## IV.   **FACTUAL BACKGROUND**

18.     In 2016, Defendant ByHeart Inc. was formed because, according to its marketing materials, existing formula manufacturers forced families to "compromise" the health and safety of infants by using substandard formula. Defendant ByHeart promised to disrupt the infant formula industry with a new and better approach to infant formula.

19.     The formula's packaging echoed these claims, stating, *e.g.,* "100% of PEDIATRICIANS SURVEYED endorse this formula for EASY DIGESTION;" "Our Farm to Formula Quality Promise;" "Our Recipe from Scratch," "Small-batch Blending," "Crafted in the ByHeart Kitchen," and touting "Hand-picked Ingredients."

20.     Unfortunately, formula crafted in ByHeart's kitchen meant formula manufactured in unsanitary facilities with ingredients that included life-threatening bacteria.

21.     Public reporting and FDA inspection records reflect significant safety and sanitation concerns at Defendant's facilities over the past several years. In December 2022, ByHeart voluntarily recalled multiple lots of powdered infant formula due to potential contamination with *cronobacter sakazakii*, a dangerous pathogen that causes severe illness in infants. In August 2023, the FDA issued a formal Warning Letter to ByHeart following inspections of its Reading, Pennsylvania facility. The letter cited failures in manufacturing controls designed to prevent microbial contamination of infant formula.

22.     In February 2025, the FDA conducted a routine inspection of ByHeart's Allerton, Iowa plant and issued a Form 483, with observations relating to ingredient handling, pest-control and documentation, and facility maintenance. Defendant's records reflect that certain third-party ingredient shipments had arrived with torn bags and evidence of rodent activity, and one piece of

equipment showed rust and tested positive on a swab for *cronobacter*. These regulatory findings underscore ByHeart's challenges in maintaining sanitary conditions and robust safety controls in facilities manufacturing products for a uniquely vulnerable population.

23.    In late October 2025, the U.S. Centers for Disease Control and Prevention ("CDC") detected an increase in infant botulism cases and began investigating possible causes. Infant botulism is the infectious form of botulism that occurs when swallowed spores of the bacterium *clostridium botulinum* colonize an infant's large intestine and produce botulinum toxin. The toxin causes weakness and loss of muscle tone which can lead to difficulty feeding, respiratory distress, and other dangerous complications. Although Defendant's formula represents only 1% of the formula market, public health investigators soon realized that a disproportionate number of infants with botulism from different states had all consumed Defendant's formula prior to their diagnosis.

24.    In November 2025, federal and state health authorities opened a multistate investigation into an outbreak of infant botulism associated with ByHeart's Whole Nutrition powdered infant formula. Initially, ByHeart recalled just two lots of its formula after officials informed them of the growing number of hospitalized infants who had consumed ByHeart products.

25.    Shortly thereafter, additional cases were identified and preliminary laboratory testing by California health authorities suggested the presence of *clostridium botulinum* bacteria in a sample from an opened can of ByHeart formula fed to a sick infant. Consequently, the FDA requested that ByHeart expand its recall.

26.    On November 11, 2025, ByHeart expanded the nationwide recall to include all ByHeart Whole Nutrition infant formula products, in both cans and single-serve packets, sold

online and at major retailers across the United States. Federal and state health officials advised parents and caregivers to immediately stop using any ByHeart infant formula, to retain remaining product for potential testing if symptoms developed, and to seek urgent medical care for infants with symptoms consistent with botulism.

27.     On December 12, 2025, FDA sent warning letters to four major retailers for failing to remove recalled ByHeart infant formula from their store shelves despite being notified of the recall. A few days later, FDA issued a press release and reminded industry about its legal duties regarding food recalls under the Federal Food Drug and Cosmetic Act. FDA asked companies to follow best practices when carrying out recalls.

28.     Subsequently, as the case definition broadened and additional prior cases were reviewed, federal authorities reported a total exceeding fifty hospitalized infants across at least nineteen states, all of whom had been fed ByHeart Whole Nutrition powdered infant formula before becoming ill.

29.     The FDA conducted additional tests. A sample from an unopened, finished product sample of ByHeart powdered formula tested positive for the bacteria that causes botulism. Furthermore, samples from the whole milk powder supplied to ByHeart by Defendant Organic West tested positive for the bacteria. Defendant Dairy Farmers of America processed the milk from Organic West into whole milk powder and shipped it back to Organic West to distribute/sell the whole milk powder. Ultimately, ByHeart purchased this contaminated powder for use as an ingredient in their powdered infant formula.

30.     Plaintiffs Luisa M. Pelaez and Cristhian C. Lara Pedraza are the parents of infant A.L.P., born October 8, 2025. Prior to the events described below, Plaintiffs had no prior experience with ByHeart infant formula and were unaware of any risks associated with its use.

Plaintiffs purchased ByHeart's "Whole Nutrition Infant Formula" from Defendant Amazon. They bought the formula because they believed ByHeart's claims that their formula is healthier and superior to other brands of infant formula. Ms. Pelaez had concerns about breastfeeding and was especially interested in ByHeart's formula because it advertised being the most similar to breast milk. On October 12, 2025, Plaintiffs began feeding the ByHeart formula to their beloved newborn baby believing that it was safe to do so.

31. On October 22, 2025, when A.L.P. was approximately two weeks old, her parents began to observe that she was constipated and behaving abnormally. Over the next two days, her condition worsened: she became increasingly lethargic, refused to accept a bottle, and appeared "floppy," with a markedly weak and atypical cry.

32. On October 24, 2025, the new parents took A.L.P. to see her pediatrician in Edgewater, New Jersey. During the exam, A.L.P.'s eyes were observed to roll back and her body was limp and unresponsive. Within five to ten minutes of examining A.L.P., the pediatrician called emergency services. Although the pediatrician attempted not to alarm the family, their clinical concern was evident.

33. Paramedics rushed A.L.P. to Palisades Medical Center in North Bergen, New Jersey. A.L.P. presented with an elevated heart rate and underwent a spinal tap to test for infection. During the procedure, A.L.P. lost consciousness and stopped breathing, turned blue, and required chest compressions. Ms. Pelaez, believing her daughter had died, yelled out in distress.

34. Because of construction at Palisades Medical Center, A.L.P. was transferred shortly thereafter to Hackensack University Medical Center's children's hospital. Hackensack

was preferable also because of its larger pediatric unit with increased ability to handle serious cases.

35.     After examining her, clinicians at Hackensack became concerned about infant botulism. A.L.P. was admitted directly to the pediatric intensive care unit (PICU), where she remained for approximately two weeks. Based on the baby's clinical presentation, the medical team sought administration of the lifesaving botulism antitoxin known as "BabyBIG" (Botulism Immune Globulin Intravenous). Although efforts were made to obtain the antitoxin by Saturday evening, it did not arrive until Sunday, at which point it was administered. A.L.P. was intubated after receiving the antitoxin and remained intubated for about one week. Throughout her hospitalization, A.L.P. required a feeding tube and supportive care.

36.     Because of severe constipation and impaired gastrointestinal function, A.L.P. was initially unable to provide a stool sample for testing. A confirmatory stool test for botulism was obtained over a week into her PICU admission. The test confirmed A.L.P. had botulism.

37.     Hospital clinicians, at the request of the CDC, seized the ByHeart formula tin used to feed A.L.P. prior to her illness for testing. Plaintiffs followed up with the CDC regarding the tin. Plaintiffs understand that the hospital will receive the official test results, and they are awaiting those results.

3457174.1



*Infant Plaintiff A.L.P.*

38.     A.L.P. was discharged from the hospital on November 20, 2025, the week before

Thanksgiving. A.L.P. required (and continues to require) outpatient services and close

monitoring.

39.     Physicians advised that there were unknowns regarding A.L.P.'s long-term

prognosis and recommended a step-by-step approach to her recovery. She was referred to a

speech therapist for feeding therapy due to weakness and impaired oral-motor function. The baby

had difficulty exercising the muscles necessary for normal feeding due to being on a feeding tube

3457174.1

for so long. A.L.P. was also referred to physical therapy to address developmental delays and reduced strength, including delayed head control. Prolonged bedrest and limited mobility during hospitalization contributed to head shape abnormalities and skin rashes. A.L.P.'s breathing remains intermittently difficult and concerning, necessitating frequent pediatric follow-ups.

40.    The impact of A.L.P.'s illness on the family has been profound. Ms. Pelaez, who delivered via cesarean section, did not have the opportunity to recover postpartum and required medical care in December. She remained at A.L.P.'s bedside nearly 24 hours a day for four weeks, leaving only twice during that period.

41.    Both parents have been deeply traumatized by the experience and remain in a state of persistent anxiety and hypervigilance. They struggle with the uncertainty of A.L.P.'s development over the coming months.

42.    The family's financial and employment circumstances deteriorated as a result of A.L.P.'s illness. Ms. Pelaez resigned from her full-time position and took leave from her part-time job because the commute was untenable under the circumstances. At the time of A.L.P.'s hospitalization, Cristhian was unemployed. He applied for insurance benefits, but those benefits did not materialize due to the government shutdown. He ultimately returned to work out of necessity, despite the strain it places on the family during an already difficult period.

43.    The family continues to monitor A.L.P.'s feeding and overall development closely, in consultation with her pediatrician, and remains vigilant for lingering effects of her illness.

44.    As a direct and proximate result of consuming the contaminated ByHeart formula, minor A.L.P., has sustained severe injuries and damages as set forth above. The damages sustained by Plaintiffs as a result of Defendants' contaminated food product also include

3457174.1

medical, hospital, pharmaceutical and therapeutic expenses; other associated out-of-pocket expenses; lost wages; and great physical, emotional, and mental pain.

## V.   CAUSES OF ACTION

### COUNT I :

### STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT

45.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though each were set forth here.

46.   Defendants ByHeart, Amazon, Organic West, and Dairy Farmers of America manufactured, processed, distributed, marketed, and sold the adulterated infant formula that caused A.L.P.'s illness.

47.   The adulterated food product that the defendants manufactured, processed, distributed, and/or sold was, at the time it left the defendants' control, defective and unreasonably dangerous for its ordinary and expected use because it contained *clostridium botulinum*.

48.   The ByHeart infant formula consumed by A.L.P. was contaminated with *clostridium botulinum* when it left the control of Defendant ByHeart.

49.   A.L.P.'s consumption of the *clostridium botulinum*-contaminated infant formula caused her to develop infant botulism. Infant botulism is extremely dangerous.

50.   Because *clostridium botulinum* is colorless and odorless, consumers like Plaintiffs have no way of detecting the contamination.

51.   The ByHeart infant formula purchased by Plaintiffs and consumed by A.L.P. was contaminated with *clostridium botulinum* and was therefore defective and unreasonably dangerous to ordinary consumers.

3457174.1

52.     The ByHeart infant formula lacked any warning whatsoever to consumers. On the contrary, Defendant ByHeart promised through its marketing and promotional materials that its infant formula was safe for consumption by vulnerable infants.

53.     Defendants are strictly liable to Plaintiffs for the harm proximately caused by the manufacture and sale of their dangerous and defective food product and for their failure to warn of foreseeable risks to ordinary consumers.

54.     As a result of Defendants' production and sale of a defectively manufactured product and failure to warn of the associated dangers, Plaintiffs and their minor daughter sustained the injuries and damages set forth in the preceding paragraphs.

## COUNT II:

## NEGLIGENCE

55.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though each were set forth here.

56.     Defendants ByHeart, Amazon, Organic West, and Dairy Farmers of America manufactured, processed, distributed, marketed, and sold infant formula that was contaminated with *clostridium botulinum*, a deadly pathogen.

57.     Defendants owed a duty to all persons who consumed its products, including A.L.P., to manufacture and sell infant formula that was safe to consume, that was not adulterated with deadly pathogens like *clostridium botulinum*, and that was not produced in violation of applicable food safety regulations and industry standards. They similarly owed a duty to the parents of infants to manufacture and sell formula that was safe for parents to feed to infants.

58.     Defendants breached the duties they owe to the consumers of its food product by committing the following negligent acts and omissions:

-13-

a.    Failing to adequately investigate and respond to the potential contamination of its facility and its infant formula with *cronobacter sakazakii* in 2022;

b.    Failing to conduct a proper root cause analysis in response to the potential contamination of its facility and its infant formula with *cronobacter sakazakii* in 2022;

c.    Failing to use due care in manufacturing and processing their food product to avoid contamination by *clostridium botulinum*;

d.    Failing to adopt, implement, and follow adequate food safety policies and procedures;

e.    Failing to apply its food safety policies and procedures to ensure the safety and sanitary conditions of its food products, premises, and employees;

f.    Failing to adopt, implement, and validate food safety policies and procedures that met industry standards for the safe and sanitary production of infant formula;

g.    Placing an unsafe product that was contaminated with *clostridium botulinum* into the stream of commerce;

h.    Promoting its infant formula as exceptionally safe in its ubiquitous marketing campaigns across various platforms, including social media; and

i.    Other acts and omissions as revealed through discovery.

59.    Plaintiffs' injuries and those of their minor child are a direct and proximate result of the negligence of Defendants.

60.    As a result of Defendants' negligence, Plaintiffs and their minor child sustained the injuries and damages set forth in the preceding paragraphs.

3457174.1

**COUNT III:**

**NEGLIGENCE *PER SE* (21 U.S.C. § 331)**

61.     Plaintiffs incorporate the preceding paragraphs by reference as if each paragraph were set forth here.

62.     Defendants, their employees, agents, or those working on its behalf, as providers of food products in the United States of America, owe a duty to comply with 21 U.S.C. § 331, which states:

The following acts and the causing thereof are prohibited:

a.      The introduction or delivery for introduction into interstate commerce of any food that is adulterated;

b.      The receipt in interstate commerce of any food that is adulterated, and the delivery or proffered delivery thereof for pay or otherwise…

63.     Defendants, their employees, agents, or those working on its behalf, failed to comply with U.S.C. § 331. Such conduct constitutes negligence *per se*.

64.     As a result of the failure of Defendants, their employees, agents, or those working on its behalf, to comply with 21 U.S.C. § 331, Plaintiffs and their minor daughter sustained damages as set forth in the preceding paragraphs

**COUNT IV:**

**BREACH OF EXPRESS WARRANTY**

65.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though each were set forth here.

66.     Defendant ByHeart aggressively marketed its product as superior to other infant formulas, promising that its manufacturing approach was safer, cleaner, and more innovative than that of competitors.

3457174.1

67.     That promise was the "basis for the bargain" when Plaintiffs, as new parents of A.L.P., purchased Defendant's product over other infant formula brands. Specifically, Defendant promised:

a.     That it used a "Better Formula for Formula" when manufacturing its products;

b.     That it "held [itself] to higher standards—because babies (and parents!) deserve it"; and

c.     That, for Defendant, "'clean' isn't just a buzzword" because it is "Clean Label Project Certified."

68.     Consumers like Plaintiffs were the intended beneficiaries of these express warranties.

69.     Defendant's infant formula, however, did not conform to any of these express warranties because it contained *clostridium botulinum*, a dangerous bacteria.

70.     Defendant breached its express warranties in the following ways, among others:

a.     Defendant's infant formula was not safer or cleaner than its competitor's products because it contained *clostridium botulinum*, a dangerous bacteria; and

b.     Defendant's manufacturing process was not more innovative than that of its competitors because it failed to prevent *clostridium botulinum* from contaminating its products.

71.     Plaintiffs used the infant formula with the reasonable expectation that it was properly manufactured, safe and free of deadly pathogens, and that it was therefore safe for consumption by infants.

72.     Defendant's breach of its express warranties was the direct and proximate cause of Plaintiffs' injuries.

3457174.1

**COUNT V:**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

73.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though each were set forth here.

74.    The food product manufactured, processed, distributed, and sold by Defendants that caused A.L.P.'s illness was adulterated with *clostridium botulinum* and was in a defective condition unreasonably dangerous to ordinary consumers and members of the public when it left Defendants' control.

75.    Defendant ByHeart violated New York Statute U.C.C. § 2-314 because its goods:

a.    would not pass without objection in the trade under the contract description;

b.    were not of fair average quality within the description; and

c.    were not fit for the ordinary purposes for which such goods are used: human consumption.

76.    Plaintiffs' injuries are a direct and proximate result of Defendants breach of implied warranties, and Plaintiffs are entitled to recover for all actual, consequential, and incidental damages that flow directly and in a foreseeable fashion from these breaches.

## II.    DAMAGES

77.    Plaintiffs incorporate the preceding paragraphs by reference as if each paragraph was set forth herein.

78.    Plaintiffs suffered general, special, incidental, and consequential damages as a direct and proximate result of the acts and omissions of Defendants, in an amount that shall be fully proven at the time of trial. Such damages include, but are not limited to: past and future damages for pain and suffering, loss of enjoyment of life, mental distress, and fear of future illness and death; past and future medical expenses and other costs or related out-of-pocket

-17-

3457174.1

expense; lost wages, past and future; and any other damages that are reasonably anticipated to arise under the circumstances.

## III.    **INJUNCTIVE RELIEF**

79.    Plaintiffs request that ByHeart be required to conduct frequent and ongoing testing of its infant formula batches and to provide regular reporting of those results to all relevant regulatory authorities and Departments of Health.

## IV.    **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for relief and judgment against the Defendants in an amount far greater than Seventy-Five Thousand Dollars ($75,000.00) together with pre- and post-judgment interest, costs, and disbursements incurred herein and such other relief as the court may find just and equitable

3457174.1

## V.   <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated:  March 23, 2026

Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: _____

Fabrice N. Vincent
Celena H. Nelson
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

By: _____

Daniel E. Seltz
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

*Attorneys for Plaintiff*
*Admitted pro hac vice*

-19-

3457174.1